


**FILED**

JUN 12 2008
Jun 12, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
OF THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNY BERGMAN, ) | |
| ) | |
| Plaintiff, ) | JURY TRIAL DEMANDED |
| ) | |
| v. ) | |
| ) | **08CV3386** |
| FEDEX CORPORATE SERVICES, ) | **JUDGE KENNELLY** |
| DEBBIE SCHMIDT and KIM KYKER, ) | **MAG. JUDGE MASON** |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT

Now comes the Plaintiff, Bonny Bergman, by and through her attorneys, The Law Offices of Laurie J. Wasserman, and complains against FedEx Corporate Services, Debbie Schmidt and Kim Kyker, as follows:

### I. NATURE OF THE ACTION

1. Plaintiff Bonny Bergman ("Ms. Bergman"), an employee of Defendant FedEx Corporate Services ("Defendant" or "FedEx"), seeks to redress the legal and equitable wrongs she suffered when Defendants discriminated, retaliated and interfered with her rights under the Family and Medical Leave Act of 1993 ("FMLA") [29 U.S.C. §§2601 *et seq.*] by interfering with her right to take FMLA leave and retaliating against her for having taken FMLA leave due to a serious health condition, epilepsy.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction under §107(a)(2) of the FMLA [29 U.S.C. §2617(a)(2)] and §1331 of the Judicial Code [28 U.S.C. §1331].

3. The unlawful employment practices described herein were committed within the State of Illinois within this judicial district. Accordingly, venue in this Court is proper pursuant to §1391(b) of the Judicial Code [28 U.S.C. §1391(b)].

## III. PARTIES

4. At all times relevant, Ms. Bergman resided in this judicial district and was employed by FedEx in this district. At all times relevant to this Complaint, Ms. Bergman was an "eligible employee" as defined in §101(2) of the FMLA [29 U.S.C. §2611(2)] because she was employed for at least 12 months by FedEx and for at least 1,250 hours of service with FedEx during the previous 12-month period prior to the violation(s) of the FMLA.

5. Defendant FedEx was at all times relevant to this Complaint a foreign BCA organized under the laws of Delaware, doing business in this judicial district. Defendant is an "employer" under §101(4)(A) of the FMLA [29 U.S.C. §2611(4)(A)] because it engaged in commerce or in any industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar work weeks.

6. Defendant Debbie Schmidt ("Defendant" or "Schmidt") was, at all times relevant to this Complaint, an "employer" under §101(4)(A) of the FMLA [29 U.S.C. §2611(4)(A)] because she exercised sufficient control over Ms. Bergman's ability to take protected FMLA leave and to return to her position or a comparable position without retaliation for taking FMLA leave.

7. Defendant Kym Kyker ("Defendant" or "Kyker") was, at all times relevant to this Complaint, an "employer" under §101(4)(A) of the FMLA [29 U.S.C. §2611(4)(A)] because she exercised sufficient control over Ms. Bergman's ability to take protected FMLA leave and to return to her position or a comparable position without retaliation for taking FMLA leave.

### IV. FACTS

8. Ms. Bergman is employed by FedEx as an Administrative Assistant.

9. There are approximately five other Administrative Assistants in Ms. Bergman's department.

10. Ms. Bergman was diagnosed with epilepsy in June 1990.

11. At all times relevant, FedEx has been aware of Ms. Bergman's diagnosis of epilepsy.

12. Schmidt has been Ms. Bergman's manager since April 16, 2007.

13. Schmidt has been aware of Ms. Bergman's diagnosis of epilepsy since on or about April 16, 2007.

14. Kyker has been Schmidt's direct manager since September 1, 2007.

15. Kyker became aware of Ms. Bergman's diagnosis of epilepsy since on or about September 1, 2007.

16. Prior to Kyker and Schmidt becoming Ms. Bergman's managers, her performance reviews were always satisfactory or better.

17. Prior to Kyker and Schmidt becoming Ms. Bergman's managers, on the infrequent occasions when Ms. Bergman experienced a seizure in the workplace, Ms. Bergman

3

was permitted to take time off from work to rest.

18. On or about November 19, 2007, Kyker met with Ms. Bergman and criticized her alleged "excessive absenteeism."

19. All of the absences referenced by Kyker were attributable to FMLA-protected time off to rest after a seizure.

20. Immediately after the November 19, 2007 meeting, Kyker presented Ms. Bergman with a memo that reviewed the substance of the meeting, including that Ms. Bergman was directed to investigate going on long-term disability.

21. After the meeting Ms. Bergman called FedEx's Human Resources Department ("HR") and was told by her HR representative James Wallace ("Wallace") that he did not know how she had been working at FedEx for the last 16 years.

22. Ms. Bergman then telephoned HR Manager Jean Miller ("Miller") who said that Ms. Bergman was a safety risk. In support of that conclusion, Miller said that Ms. Bergman could be hurt while driving to work.

23. Ms. Bergman informed Miller that she has not driven in more than 16 years and that she rides a bus for the disabled to work.

24. Kyker followed up the November 19, 2007 meeting with a memo to Ms. Bergman, which erroneously stated that Ms. Bergman had missed 11 days of work.

25. Contrary to the memo, Ms. Bergman had missed one full day and 6 partial days of work in this time period, all of which represented FMLA-protected time off after seizures.

26. In November 2007 Kyker demanded a letter from Ms. Bergman's physician confirming that Ms. Bergman was capable of performing all duties set forth in her job description.

27. On or about November 20, 2007, Ms. Bergman provided a letter from her neurologist, Dr. Andres M. Kanner, which confirmed that Ms. Bergman could continue to work full-time without any restrictions.

28. On November 28, 2007, without explanation, Schmidt told Ms. Bergman to take a ride with her in Schmidt's car.

29. At about 2:15 p.m. on November 28, 2007, Schmidt and Ms. Bergman went to Schmidt's car and Schmidt drove Ms. Bergman to the back of the Outback Steakhouse parking lot and parked her car there.

30. Schmidt went into a tirade about how she was not happy with "how things were going."

31. Schmidt told Ms. Bergman that she hoped Ms. Bergman did not look into legal representation.

32. Schmidt demanded that Ms. Bergman provide another letter from her doctor certifying that she could perform the essential functions of her job.

33. On or about November 29, 2007, Ms. Bergman provided another letter from her neurologist, Dr. Andres M. Kanner, which confirmed that, after reviewing Ms. Bergman's job description, he believed that she was able to "perform each of the items listed without any problem."

34. Ms. Bergman is the only member of her department required to check in and out on a daily basis in the morning, at lunch, and at the end of the day via e-mail with Schmidt.

35. In late January 2008, Schmidt did not invite Ms. Bergman to attend an off-site luncheon with all of the other employees in her department.

36. After the luncheon, when Ms. Bergman asked Schmidt why Ms. Bergman was not invited, Schmidt said that "Memphis Legal" had informed her that Ms. Bergman can no longer be in another employee's car.

37. In late January 2008, Defendants revised the performance criteria for "Administrative Assistant." The new performance criteria did not accurately reflect the duties of Administrative Assistants.

38. Upon information and belief, several Administrative Assistants in Ms. Bergman's department believe that the performance criteria were revised in an effort to force Ms. Bergman out of her job.

39. Upon information and belief, in late January 2008, several Administrative Assistants in Ms. Bergman's department refused to sign the new performance criteria for "Administrative Assistant" since it did not accurately reflect the duties of Administrative Assistants.

40. On or about February 1, 2008, Kyker gave Ms. Bergman a memo which criticized Ms. Bergman's attendance record and accused her of overburdening her co-workers due to frequent absences.

41.    In the February 1, 2008 memo, Defendants erroneously tracked Ms. Bergman's attendance record, since contrary to Defendants' calculations, as of February 1, 2008, Ms. Bergman had missed less than 40 hours of work since June 1, 2007.

42.    All of the time Ms. Bergman missed from June 1, 2007 to February 1, 2008 was FMLA-protected time.

43.    On or about February 4, 2008, Ms. Bergman asked Schmidt for four hours off to see her physician that day since she was suffering from significant chest and stomach pain.

44.    In response to Ms. Bergman's request, Schmidt e-mailed her that

> It is important that we have all action items and projects completed for today prior to your departure. Mondays are very busy and we have several reports due to the Region. Items due to the District, and 1-9 finished for new hire, Rob Womac.... If completed, I will allow you to take a ½ day vacation. In the future for planning purposes, please let me know in advance (usually 2 weeks). We need to know what admin will be covering your calls and misc. items.

45.    When Ms. Bergman saw her doctor on February 4, 2008, he diagnosed her with benign essential hypertension, chronic reflux esophagitis, active seizures, diarrhea, and Irritable Bowel Syndrome.

46.    Based on her physician's opinion that the stress and harassment in the workplace were triggering seizures and other physical symptoms, Ms. Bergman began a FMLA leave on February 5, 2008.

47.    Ms. Bergman returned to work from her FMLA leave on April 15, 2008.

48.    Since returning to work, Ms. Bergman has been subjected to increased harassment and unreasonable scrutiny on an ongoing basis.

49.    On Tuesday, April 15, 2008, when Ms. Bergman returned from her FMLA

leave, Schmidt gave her a deadline of Thursday, April 17, 2008, to complete quarterly reports.

50. Some of Ms. Bergman's co-workers told her that this was an impossible deadline for her to meet alone, and volunteered to help her meet the deadline.

51. Since Ms. Bergman's return from FMLA leave, Schmidt has demanded that she restrict her e-mails to the entire team of Account Executives to one at the end of the day, and then only after Schmidt reviews the e-mail.

52. This restriction limiting Ms. Bergman to one e-mail to the entire team of Account Executives at the end of the day severely hampers her ability to do her job.

53. When Ms. Bergman told Schmidt that this restriction severely hampers her ability to do her job, Schmidt told Ms. Bergman that "things worked well when you were gone."

54. Upon information and belief, no other Administrative Assistants are required to limit their e-mails to the entire team of Account Executives to one at the end of the day, and then only after Schmidt reviews and approves the e-mail.

55. Since Ms. Bergman's return from FMLA leave, Schmidt has demanded that Ms. Bergman substantially limit her telephone calls to the Account Executives.

56. The restriction limiting Ms. Bergman's telephone calls to the Account Executives severely hampers her ability to do her job.

57. Upon information and belief, no other Administrative Assistants are restricted in their telephone calls to the Account Executives.

58. Since Ms. Bergman's return from FMLA leave, Schmidt has prohibited her from copying Kyker and Ms. Bergman's HR representative on any e-mails that she exchanges with Schmidt.

8

59. Upon information and belief, no other Administrative Assistants are prohibited from copying Kyker and/or their HR representative on any e-mails they exchange with Schmidt.

60. Since Ms. Bergman's return from FMLA leave, Schmidt has given Ms. Bergman a weekly "to-do" list.

61. Upon information and belief, no other Administrative Assistants are given weekly "to-do" lists.

62. On or about April 21, 2008, during a department conference call, Schmidt told Ms. Bergman that she would no longer be taking conference call minutes.

63. Ms. Bergman first started taking conference call minutes in 2004.

64. Schmidt humiliated Ms. Bergman by not only removing yet another job duty, but removing the job duty in such a public manner.

### COUNT I - INTERFERENCE IN VIOLATION OF THE FMLA

65. Ms. Bergman realleges paragraphs 1 through 64 of this Complaint.

66. By refusing to offer Ms. Bergman intermittent FMLA leave following seizures, Defendants interfered with Ms. Bergman's exercise of her rights under the FMLA.

67. Defendants' failure to offer Ms. Bergman intermittent FMLA following seizures violated the anti-interference/entitlement provisions of the FMLA.

68. As a proximate result of the foregoing facts, Ms. Bergman is in jeopardy of losing her job and has suffered emotional and physical harm.

WHEREFORE, Plaintiff prays for:

a. Revision of her attendance record to reflect all time off from work that should have been accorded FMLA protection.

9

b. Wages, salary, employment benefits and other compensation lost to her as a result of Defendants' violations of the FMLA.

c. Prejudgment interest at the prevailing rate from the date of the FMLA interference to the date of judgment on the award of wages, salary, employment benefits and other compensation lost to her as a result of Defendants' violations of the Family and Medical Leave Act of 1993;

d. Liquidated damages doubling the award of interest, back pay, lost employment benefits and other compensation lost to her as a result of Defendants' violations of FMLA;

e. An Order that Defendants allow Plaintiff time off from work to see her physician when she has symptoms related to a serious health condition;

f. Reasonable attorney's fees and the costs and expenses of this action;

g. Such other relief as this Court deems just and appropriate.

### COUNT II - RETALIATION IN VIOLATION OF THE FMLA

69. Ms. Bergman realleges paragraphs 1 through 64 of this Complaint.

70. By subjecting Ms. Bergman to a hostile work environment following her FMLA leave of absence and thereby retaliating against her for exercising her rights under the FMLA, Defendants violated the anti-discrimination and anti-retaliation provisions of the FMLA.

71. As a proximate result of the foregoing facts, Ms. Bergman has suffered emotional and physical harm.

WHEREFORE, Plaintiff prays for:

a. A harassment-free and retaliation-free work environment;

b. Wages, salary, employment benefits and other compensation lost to her as a result of Defendants' violations of the FMLA;

c. Prejudgment interest at the prevailing rate from the date of the FMLA harassment and retaliation to the date of judgment on the award of wages, salary, employment benefits and other compensation lost to her as a result of Defendants' violations of the FMLA;

    d.    Liquidated damages doubling the award of interest, back pay, lost employment benefits and other compensation lost to her as a result of Defendants' violations of the FMLA;

    e.    An Order that Defendants allow Plaintiff time off from work to see her physician when she has symptoms related to a serious health condition;

    f.    Reasonable attorney's fees and the costs and expenses of this action;

    g.    Such other relief as this Court deems just and appropriate.

Respectfully submitted,

*/s/ Laurie J. Wasserman*
Laurie J. Wasserman
One of Plaintiff's Attorneys

Dated: June 12, 2008

Laurie J. Wasserman #3124845
Carol G. Silverman #6189650
Law Offices of Laurie J. Wasserman
9933 Lawler Avenue, Suite 122
Skokie, IL 60077
847-674-7324
FAX 847-674-6684
ljw@webemploymentlaw.com

**JURY DEMAND**
Plaintiff demands a jury to hear and decide all issues of fact.

G:\Legal\PLEADING\BERGMAN\FMLA complaint.wpd